# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| SUPERNOVA SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:10-CV-319 |
| | ) |
| GREAT AMERICAN BROADBAND, INC., | ) |
| ROBERT L. SCHMIDT, and | ) |
| SUBODH NAYAR, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

## I. INTRODUCTION

This dispute arises out of a Stock Purchase Agreement entered into between Plaintiff Supernova Systems, Inc. ("Supernova"), and Defendant Great American Broadband, Inc. ("GAB"), whereby GAB purchased all of the shares of Supernova's five subsidiaries and, in exchange, issued Supernova shares of GAB's stock, together with cash and a promissory note. Supernova alleges in this suit that GAB and its two officers, Defendants Robert Schmidt and Subodh Hayar, violated the anti-fraud provisions of the Indiana Uniform Securities Act ("IUSA") during the transaction by omitting or misrepresenting material facts about GAB's financial circumstances and valuation.[1]

Now before the Court is a Motion for Leave to File Second Amended Complaint filed by Supernova, seeking leave to plead additional specific factual allegations that it claims GAB

---

[1] Supernova also alleged that Defendants violated the registration requirements of the IUSA, but that claim has since been dismissed on summary judgment. (*See* Docket # 1, 80.)

omitted or misrepresented in connection with the transaction.[2] (Docket # 81.) Defendants oppose Supernova's motion, contending that the integration clause in the Stock Purchase Agreement operates to bar Supernova's fraud claim and thus the proposed amendment is "futile."[3] (Docket # 85.)

For the following reasons, the Court will GRANT Supernova's motion to amend.

## II. PROCEDURAL BACKGROUND

Supernova commenced this suit under the IUSA on September 10, 2010, and then amended its complaint on November 22, 2010. (Docket # 1, 8.) The Court conducted a scheduling conference on February 22, 2011, and set the following deadlines: October 1, 2011, for the completion of all discovery; June 15, 2011, for Supernova to seek leave of Court to amend the pleadings; and July 15, 2011, for Defendants to seek leave of Court to amend the pleadings. (Docket # 19, 28.) The Court later set December 15, 2011, as the deadline for filing dispositive motions and then extended discovery through that date. (Docket # 52, 56.)

On February 9, 2012, Supernova filed the instant motion to amend. (Docket # 81.) Several weeks later, the Court set a final pretrial conference for May 25, 2012, and a three-day bench trial to commence on June 26, 2012. (Docket # 84.)

---

[2] The IUSA, formerly Indiana Code § 23-2-1 *et seq*., was amended and recodified by Indiana Public Law 27-2007, effective July 1, 2008, at Indiana Code § 23-19-1 *et seq*. *See West v. State*, 942 N.E.2d 862, 863 n.1 (Ind. Ct. App. 2011). The parties agree that, pursuant to Indiana Code § 23-19-1-0.2, the predecessor act applies to this dispute. Of course, the Court will "apply the law that we believe the Supreme Court of [Indiana] would apply if the case were before the tribunal rather than before this [C]ourt." *Help at Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001).

[3] An "integration" clause "generally states that a contract represents the entire agreement between the parties." *Deluxe Media Servs., LLC v. Direct Disk Network, Inc*., No. 06 C 1666, 2007 WL 707544, at *6 (N.D. Ill. Mar. 2, 2007).

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course within twenty-one days after serving it, or if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a plaintiff may amend only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). Leave to amend is freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, this right is not absolute, *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002), and can be denied for undue delay, bad faith, dilatory motive, prejudice, or futility, *Ind. Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003).

Moreover, the requirements of Rule 15 must be read in conjunction with the requirements of Federal Rule of Civil Procedure 16 because once the district court has filed a pretrial scheduling order pursuant to Rule 16 establishing a time table for amending pleadings, that rule's standards control. *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011); *BKCAP, LLC v. Captec Franchise Trust 2000-1*, 3:07-cv-637, 2010 WL 1222187, at *2 (N.D. Ind. Mar. 23, 2010) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992)); *see also Lauer v. Patriot Paint Co.*, No. 1:06-CV-0244, 2007 WL 2068595, at *2 (N.D. Ind. July 17, 2007); *Kortum v. Raffles Holdings, Ltd.*, No. 01 C 9236, 2002 WL 31455994, at *3 (N.D. Ill. Oct. 30, 2002). Rule 16(b)(3)(A) requires that the scheduling order "limit the time to join other parties, amend the pleadings, complete discovery, and file motions."

Thus, "a party seeking to amend a pleading after the date specified in a scheduling order

must first show 'good cause' for the amendment under Rule 16(b); then, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15." *BKCAP*, 2010 WL 1222187, at *2 (quoting *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995)); *see Alioto*, 2011 WL 2642369, at *3 (collecting cases). "A court's evaluation of good cause is not co-extensive with an inquiry into the propriety of the amendment under . . . Rule 15." *Tschantz*, 160 F.R.D. at 571 (quoting *Johnson*, 975 F.2d at 609). "Rather, the good cause standard focuses on the diligence of the party seeking the amendment." *BKCAP*, 2010 WL 1222187, at *2 (citing *Tschantz*, 160 F.R.D. at 571); *see Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). "In other words, to demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met." *BKCAP*, 2010 WL 1222187, at *2 (citing *Tschantz*, 160 F.R.D. at 571).

## IV.  DISCUSSION

*A.  Supernova Establishes "Good Cause" for the Untimely Amendment*

Here, Supernova's motion to amend was filed more than seven months after the July 15, 2011, deadline for amending its pleadings. Accordingly, before determining whether the motion is proper under Rule 15, the Court must consider whether Supernova has "good cause" under Rule 16 for the untimely filing of the motion.

Although Supernova does not expressly acknowledge the motion's untimeliness and its duty to show "good cause," it does thoroughly explain its reasons for the tardy filing. It states that the documentation and information necessitating the proposed amendment only came to light recently as a result of GAB's discovery responses.

More specifically, Supernova articulates that on April 29, 2011, it served GAB with

requests for production of documents concerning its financial circumstances at the time of the transaction. (Pl.'s Mem. in Supp. 2.) However, because of GAB's change of counsel and other "circumstances," GAB did not begin to produce documents to Supernova until mid-to-late September 2011. (*Id*.) Supernova represents that it was through these documents that it first began to learn of the facts alleged in the proposed amendment. (*Id*. at 3.) This information included: (1) GAB's stock issue and transfer records showing issuances of stock to its officers and Advisory Board members and the consideration paid therefore; (2) GAB's loan agreement with Pearl Capital Holdings, LLC; and (3) minutes and other financial documents, which revealed that GAB had received "bridge loans" from Schmidt and some members of its Advisory Board prior to the closing of GAB's transaction with Supernova. (*Id*. at 2-3.)

After receipt of this information, Supernova scheduled depositions of Schmidt and Hayar, which took place on November 14 and 15, 2011. (*Id*. at 3.) Upon examining the deposition transcripts, Supernova gleaned more information about the purported omissions or misrepresentations of fact alleged in the proposed amendment. (*Id*.) Finally, following the depositions, Supernova served GAB with an additional request for the production of documents, to which GAB responded in late January 2012 and then supplemented in early February 2012. (*Id*.)

In addition, Supernova emphasizes that the proposed additional paragraphs to the complaint should come as no surprise to GAB, since GAB itself produced the documents underlying and necessitating the proposed amendments and attended Schmidt's and Hayar's depositions. (*Id*. at 3-4.) Supernova also explains that GAB was scheduled to depose Supernova's officer, Terry Miller, after the filing of the instant motion, and thus has had the

5

opportunity to examine him about the additional factual allegations, dissipating any potential prejudice from the amendment. (*Id*. at 4.)

Supernova's arguments concerning "good cause" are well-taken. On this record, it is undisputed that Supernova was unaware of the information in the proposed amendment until it received GAB's discovery responses in September 2011. Supernova then pursued this information with due diligence by conducting depositions and additional discovery. *See, e.g.*, *Midland Nat'l Life Ins. Co. v. Ash Fin. Holdings Grp., Inc.*, No. 1:06-cv-66, 2007 WL 1749222, at *4 (N.D. Ind. June 15, 2007) (finding "good cause" for an untimely amendment where plaintiff only learned of the alternative claim through defendant's discovery responses); *Stallings v. Union Pac. R.R.*, No. 01 C 1056, 2003 WL 21317297, at *5 (N.D. Ill. June 6, 2003) (considering when finding "good cause" that "only through ongoing discovery and investigation was [the plaintiff] able to determine the validity of [the proposed amendment]").

Furthermore, as Supernova emphasizes, the additional factual allegations serve only to amplify and clarify its existing fraud claim under the IUSA, not to advance new claims. There is no indication that GAB will be prejudiced by the amendment, particularly if the Court re-opens the discovery period on a limited basis. (*See* Docket # 83 (discussing at the February 23, 2012, scheduling conference that discovery will be re-opened and extended to May 1, 2012, if the motion to amend is granted).) Moreover, GAB does not mention the untimeliness of the motion, contest Supernova's showing of "good cause," or claim that it will be prejudiced by the amendment. *See, e.g.*, *Leonelli v. City of Kendallville*, No. 1:07-cv-121, 2007 WL 4233495, at *3 (N.D. Ind. Nov. 29, 2007) (finding good cause for the late clarifying amendment where defendants did not suggest that they would be prejudiced by it and discovery remained open).

6

Therefore, Supernova has established "good cause" under Rule 16 for the untimely filing of the motion to amend. The Court will next examine the appropriateness of the proposed amendment under Rule 15.

*B. GAB's "Futility" Argument Is Unpersuasive*

GAB raises just one argument in opposition to Supernova's motion to amend: that the proposed amendment is futile because the integration clause in the Stock Purchase Agreement operates to bar Supernova's fraud claim. *See GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation and internal quotation marks omitted)). Ultimately, GAB's argument misses the mark.

Here, the relevant clause in the Stock Purchase Agreement reads as follows:

**11.4 Entire Agreement**

This Agreement and the documents and agreements contemplated in this Agreement constitute the entire agreement between and among the parties with regard to the subject matter hereof. This Agreement supersedes all previous agreements between or among the parties. There are now no agreements, representations, or warranties between or among the parties other than those set forth in the Transaction Agreements. In the event of a conflict between the provisions of any Transaction Agreement and the provision of this Agreement, the provisions of this Agreement shall control.

(Am. Compl. Ex. C.) "Transaction Agreements" means the Stock Purchase Agreement "and all other agreements, certificates, instruments, documents and writing delivered by Purchaser and/or Seller in connection with the Transaction." (Am. Compl. Ex. C.)

In support of its argument, GAB cites *Rissman v. Rissman*, 213 F.3d 381, 383-84 (7th Cir. 2008), in which the Seventh Circuit Court of Appeals held that a non-reliance clause can

7

operate to bar claims of fraud brought under federal securities laws.[4] In *Rissman*, the Court

opined, in relevant part:

> Two courts of appeals have held that non-reliance clauses in written stock-purchase agreements preclude any possibility of damages under the federal securities laws for prior oral statements. . . . [W]e now follow those cases by holding that a written anti-reliance clause precludes any claim of deceit by prior representations. The principle is functionally the same as a doctrine long accepted in this circuit: that a person who has received written disclosure of the truth may not claim to rely on contrary oral falsehoods. A non-reliance clause is not identical to a truthful disclosure, but it has a similar function: it ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication.

213 F.3d at 383-384 (internal citations omitted). GAB contends that "[t]here is no reason why this conclusion is not applicable with equal force to [Supernova's] claim under the IUSA." (Resp. Br. 3.)

Contrary to GAB's assertion, there indeed are reasons why the holding in *Rissman* may not be equally applicable to Supernova's fraud claim under the IUSA. First of all, in *Rissman*, the Seventh Circuit was reviewing the district court's decision to grant summary judgment where the factual record was already developed, not, like here, on a motion to amend the complaint. As, Judge Rovner cautioned in her concurring opinion:

> The issue of reasonable reliance has always depended upon an analysis of all relevant circumstances. I write separately merely to avoid the inevitable quotes in future briefs characterizing our holding as an automatic rule precluding any damages for fraud based on prior oral statements when a non-reliance clause is included in a written agreement. The world is not that simple, and our holding today cannot be interpreted so simplistically.

213 F.3d at 389; *see Petrakopoulou v. DHR Int'l, Inc.*, 590 F. Supp. 2d 1013, 1018 (N.D. Ill.

---

[4] A "non-reliance" clause "is one that states that the parties explicitly have not relied on any earlier or outside representations other than the ones in the contract." *Deluxe Media Servs.*, 2007 WL 707544, at *6.

2008) (opining that the court could not, "at this stage, conclude that defendant's alleged reliance on plaintiff's statements was unreasonable as a matter of law based on the language of the Agreement section alone"); *Hartmarx Corp. v. JBA Int'l, Inc.*, No. 99 C 4874, 2002 WL 406973, at *4-5 (N.D. Ill. Mar. 15, 2002) (rejecting defendant's argument that *Rissman* creates an automatic rule barring fraud claims solely because a contract contains non-reliance and integration clauses, and emphasizing that reasonable reliance depends upon all relevant circumstances); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 65-66 (D. Del. 2002) (reserving judgment on the issue of whether an integration clause barred claim of justifiable reliance until a later stage in the proceedings, rather than addressing it in the motion to dismiss).

Furthermore, the relevant clause in *Rissman* expressly included that Rissman executed the agreement "without reliance upon any statement or representation by" defendant. 213 F.3d at 383. The clause at issue here does not contain such language, implicating a possible distinction between an "integration" clause and a "non-reliance" clause that some courts have found pivotal. *See Vigortone Ag Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644-45 (7th Cir. 2002) (finding the clause at issue to be an "integration" clause, rather than a "no-reliance" clause, and thus declining to analyze it under *Rissman*); *Deluxe Media Servs.*, 2007 WL 707544, at *6-7 (same); *Am. Hardware Mfrs. Assoc. v. Reed Elsevier, Inc.*, No. 03 C 9421, 2005 WL 3236590, at *5-6 (N.D. Ill. Nov. 29, 2005) (same); *Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 470-71 (S.C. Ct. App. 2003) (same).

Moreover, Supernova's assertion that the proposed amendments are more akin to omissions than affirmative misrepresentations has some merit. (Reply Br. 7.) With respect to

9

omissions, the integration clause at issue indicating that there are no "agreements, representations, or warranties" between the parties other than those set forth in the Transaction Agreements is consistent with what Supernova contends—that GAB violated the IUSA by "omit[ting] to state a material fact" about GAB's financial condition. Ind. Code § 23-2-1-12(2).

And finally, *Rissman* involved a fraud claim brought under federal securities law, which requires proof of reliance as an element of the claim. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Here, however, Supernova's fraud claim is advanced under the IUSA, and GAB has not contested Supernova's assertion that proof of reliance is not an element of a fraud claim under the IUSA. *See Landeen v. PhoneBILLit, Inc.*, 519 F. Supp. 2d 844, 864 (S.D. Ind. 2007) ("Unlike [plaintiff's] other claims sounding in fraud, under the plain language of Indiana securities law it seems that [plaintiff] need only prove that [defendant] made an untrue statement of material fact in connection with the purchase of [plaintiff's] shares of [defendant's] stock. Proof of reliance is not required." (citation omitted)); *Manns v. Skolnik*, 666 N.E.2d 1236, 1248 (Ind. Ct. App. 1996) ("[Ind. Code § 23-2-1-12(2)] turns entirely on whether the information disclosed was accurate, if disclosed at all. If material information is either misrepresented or omitted entirely then the statute has been violated."); *Rausch v. Jones*, 509 N.E.2d 236, 238 (Ind. Ct. App. 1987) ("[I]t would appear that the spirit and letter of the [IUSA] requires that the issuer is obligated to see that the investor is informed of all the material facts."); *Arnold v. Dirrim*, 398 N.E.2d 426, 435 (Ind. Ct. App. 1979) (rejecting defendant's assertion that plaintiff had to prove reliance on the untrue statement or omission, stating "[t]he buyer need only show that he did not know of the untruth or omission").

As articulated earlier, leave to amend is freely given when justice so requires. Fed. R.

Civ. P. 15(a)(2). Since the only argument advanced by GAB in opposition to Supernova's motion to amend—that the proposed amendment is "futile" because Supernova's fraud claim is barred by the integration clause in the Stock Purchase Agreement—is unpersuasive, Supernova's motion to amend will be GRANTED.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File Second Amended Complaint (Docket # 81) is GRANTED. The Clerk is DIRECTED to show the proposed Second Amended Complaint attached to the Motion as Exhibit B as filed. As contemplated by the Court at its February 23, 2012, scheduling conference (Docket # 83), the discovery period is re-opened up to and including May 1, 2012, for the limited purpose of conducting discovery on the factual matters set forth in the amendment.

SO ORDERED.

Enter for the 12th day of March, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge